UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
SANTO LANZAFAME, in his fiduciary capacity as :
Trustee for the POINTERS, CLEANERS & : **MEMORANDUM AND ORDER**
CAULKERS WELFARE, PENSION & ANNUITY :
FUNDS, and in his fiduciary capacity as Administrator : 09-CV-0873 (ENV) (JO)
of the BRICKLAYERS AND TROWEL TRADES :
INTERNATIONAL PENSION FUND and the :
INTERNATIONAL MASONRY INSTITUTE, and as :
President of the BRICKLAYERS AND ALLIED :
CRAFTWORKERS LOCAL UNION NO. 1 :
B.A.C.I.U., AFL-CIO, :
                             Plaintiff, :
                                    :
       -against- :
                                    :
DANA RESTORATION, INC., NANCY DIMARCO, :
and JOHN and/or JANE DOE FIDUCIARY :
                                :
                              Defendants. :
------------------------------------------------------------------ x

**VITALIANO, D.J.**

On March 2, 2009, Santo Lanzafame, in his capacity as fiduciary to certain employee benefit funds and a union official, brought this action against Dana Restoration, Inc. ("DRI") and DRI officer Nancy DiMarco for failing to remit employee benefit fund contributions and union dues, in violation of a collective bargaining agreement ("CBA"), the Employee Retirement Income Security Act ("ERISA"), and the Labor Management Relation Act ("LMRA"). Defendants failed to respond to the complaint and the Court entered default judgment on February 1, 2010. The case was referred to Magistrate Judge James Orenstein to conduct an inquest and assess damages.

Judge Orenstein issued a Report & Recommendation ("R&R") recommending that the Court enter judgment against DRI only in the total amount of $15,355.96, consisting of $7,379.51 in unpaid contributions; $844.35 in unpaid union dues; $707.70 in interest on unpaid

1

contributions; $1,475.90 in additional liquidated damages; $4,783.50 in attorneys' fees; and $165.00 in costs. Judge Orenstein further recommended that the Court order DRI to submit to an audit for the contractual term ending on June 30, 2008, and permit Lanzafame to petition the Court to amend the judgment to reflect any additional award that might be appropriate. Finally, Judge Orenstein recommended that the court deny Lanzafame's remaining requests for relief, including an injunction and the posting of a surety bond, and that it dismiss all claims against DiMarco. On August 31, 2010, Lanzafame filed timely objections to Judge Orenstein's R&R.

## I. BACKGROUND

The parties entered into a CBA covering the period from July 1, 2004 to June 30, 2008. Pursuant to a rate schedule in the CBA, DRI made monthly contributions to the Pointers, Cleaners & Caulkers Welfare, Pension & Annuity Funds ("PCC funds") and the Bricklayers and Trowel Trades International Pension Fund and International Masonry Institute ("Brick funds"), and remitted weekly dues for all employees who were members of the Bricklayers and Allied Craftworkers Local Union No. 1, B.A.C.I.U., AFL-CIO ("Local 1"). DRI also submitted monthly remittance reports specifying the hours worked by its employees and the amount of contributions owed for each employee.

On March 2, 2009, Lanzafame filed the instant action, alleging that, beginning on January 1, 2006, DRI had stopped making employee benefit fund contributions and remitting union dues in violation of the CBA, ERISA, and LMRA. Lanzafame also alleged that DRI had failed to provide remittance reports in violation of the CBA and ERISA and had refused to cooperate with its request for an audit.

2

## II. DISCUSSION

### A. Standard of Review

In reviewing the Report and Recommendation of a magistrate judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district judge is required to "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

### B. Plaintiff's Objections

Plaintiff objects to the R&R on several grounds: (1) the dismissal of all claims against DiMarco; (2) the award of delinquent contributions and dues for June 2008 only, and not for both June and July 2008; (3) the award of delinquent contributions to the PCC funds only, and not to both the PCC and Brick funds; (4) the denial of prejudgment interest on unpaid union dues; and (5) the reduction of attorney's fees and costs.

#### 1. DiMarco's Liability

Plaintiff argues that Judge Orenstein exceeded his authority in evaluating DiMarco's liability because liability had already been established by the Court's default judgment finding in its favor. In other words, plaintiff contends that Judge Orenstein should be limited to merely assessing damages against DiMarco. It is true that in a post-default determination, a defaulting party cannot contest liability. Instead, that party is limited to raising arguments regarding damages. Finkel v. Romanowicz, 577 F.3d 79, 83 n. 6 (2d Cir. 2009). This is because a finding of default judgment "entered on well-pleaded allegations . . . establishes a defendant's liability." TWA v. Hughes, 449 F.2d 51, 69 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973). A court, however, always retains the discretion to determine whether a final default judgment is

appropriate. Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 280 (E.D.N.Y. 2010) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)). Indeed, awarding damages in the face of insufficient allegations, even after default judgment is entered, would be inconsistent with the threshold requirement that a complaint be well-pleaded. See Levesque v. Kelly Commc'ns, Inc., 91 Civ. 7045, 1993 U.S. Dist. LEXIS 791, at *17 (S.D.N.Y. Jan. 25, 1993).

After a careful review of the pleadings, the Court agrees with Judge Orenstein's finding that plaintiff failed to meet its threshold requirement of alleging personal liability on the part of DiMarco. Under New York law, a corporate officer who "signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" Lerner v. Amalgamated Clothing & Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991) (quoting Mencher v. Weiss, 306 N.Y. 1, 4, 114 N.E.2d 177, 179 (1953)). Here, there is no such clear and explicit evidence regarding DiMarco's personal liability. The length and boilerplate text of the CBA, including the improper use of male pronouns in referring to DiMarco, the mixing of corporate and individual liability language in a single paragraph, and the absence of language in the CBA identifying DiMarco's role in the organization, are all factors that weigh against a finding of personal liability. See Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 35 F.3d 29, 35 (2d Cir. 1994). Furthermore, the record does not suggest that DiMarco's personal guarantee of DRI's performance was discussed during negotiations. See id. As such and for the additional reasons stated in the R&R, Judge Orenstein's recommendation is adopted and recovery against DiMarco is denied. The objection is overruled.

## 2. Limiting Recovery of Unpaid Contributions to June 2008

Plaintiff next objects to Judge Orenstein's recommendation that recovery of unpaid contributions and union dues be limited to June 2008. As a preliminary matter, plaintiff argues that such an interpretation of the CBA goes to the issue of liability, not damages.[1] Default judgment, however, does not give plaintiff a "blank check to recover from [defendant] any losses it had ever suffered." Hughes, 449 F.2d at 70. The default judgment finding aside, plaintiff must still establish the extent of the injuries caused by defendant in order to recover damages. Id. Here, the extent of the injuries turns on a reading of the CBA, and, therefore, Judge Orenstein did not exceed his authority in interpreting the agreement to determine damages.

Then, plaintiff argues, more specifically, (1) that Judge Orenstein's interpretation of the CBA runs contrary to the intent of the parties and the purpose of the notice provisions in the LMRA and the National Labor Relations Act; and (2) that DRI's submission of remittance reports after June 2008 amounts to the adoption of a subsequent agreement.

First off, the intent of the parties as it relates to their understanding of the language of the renewal provision, is unclear. As Judge Orenstein notes in his R&R, he was forced to interpret the CBA without the benefit of any memoranda of law, despite his request for submissions. Additionally, contrary to plaintiff's assertion, while LMRA requires that parties to a collective bargaining agreement provide notice of its intent to modify or terminate an existing agreement, the statute does not speak to the effect of a notice to modify given under its terms. See 29 U.S.C.

---

[1] The CBA includes an automatic renewal provision that extends the contract from year to year for one year terms. The renewal does not occur if either party provides written notice within 60 calendar days prior to the expiration date of the CBA of its desire to amend or terminate the agreement. Such notification triggers a requirement to negotiate within 45 days of its receipt. The agreement terminates if the negotiations are not completed prior to the expiration date or the parties do not agree to its extension.

Local 1, via its attorney, sent a letter to DRI on February 29, 2008, over 60 days prior to the expiration date of the CBA, of its desire to amend the agreement. Although DRI did not respond to the notification prompting any negotiation, Judge Orenstein found that, under its plain language, the CBA expired on June 30, 2008.

§ 158(d). Such effect is found instead in the terms of the agreement. Thus, for example, "where a collective bargaining agreement does not explicitly differentiate between the functional effect of notice to modify and notice to terminate, notice of a party's intention to modify is sufficient to prevent automatic renewal of the agreement." Marine Transport Lines, Inc. v. Int'l Org. of Masters, 636 F. Supp. 384, 388 (S.D.N.Y. 1986). Here, the automatic renewal provision in the CBA does not differentiate between the various notices; the Funds' notice of modification thus precludes an assumption that the CBA was automatically extended.

Moving to plaintiff's second argument, Judge Orenstein found that while the submission of remittance reports after the expiration of the CBA on June 30, 2008 may give rise to quasi-contractual claims, there was no contractual or statutory claim for damages after that date. In response, plaintiff cites Brown v. C. Volante Corp., 194 F.3d 351 (2d Cir. 1999), for the proposition that DRI's actions demonstrated an intent to be bound by an unsigned CBA. In Volante, the court found that the employer's conduct—submitting sixty-one remittance reports over the course of six years, cooperating with an audit, paying union wages to employees, and acknowledging in a letter its responsibility to the funds—manifested an intent to adopt the terms of an unsigned CBA. Id. at 354-355; see also Robbins v. Lynch, 836 F.2d 330, 332 (7th Cir. 1988) (employer intended to be bound by an unsigned CBA when it promised in writing to adhere to a new agreement; paid the union scale, union dues, and pension and welfare contributions for a period of three years; negotiated grievances; and invoked the termination clause of the unsigned agreement); Trustees of Atlanta Iron Workers, Local 387 Pension Fund v. S. Stress Wire Corp., 724 F.2d 1458,1459-60 (11th Cir. 1983) (employer manifested an intent to be bound by an unsigned CBA by, over a period of five years, hiring nearly all of its labor from the union hall, submitting to two audits, making fringe benefit reports and paying monies to a

trust fund). However, unlike the employers in those cases, DRI, by submitting remittance reports for only July and August 2008— two months after the 2004 CBA expired—did not manifest so clear an intention to be bound by a new agreement or extend the existing agreement. Consequently, on de novo review, the Court adopts Judge Orenstein's recommendation and limits recovery to June 2008.

3. Limiting Recovery to the PCC Funds

Plaintiff also objects to Judge Orenstein's recommendation that recovery of unpaid contributions be limited to the amount owed to the PCC funds. In his R&R, Judge Orenstein found that the CBA imposes an explicit obligation to make contributions to the PCC funds, but not to the Brick funds. Plaintiff argues in opposition that Articles XIII, XV, and XVIII, taken together, adequately specifies DRI's obligation to make contributions to both the PCC funds and the Brick funds. While it is true that Articles XIII and XVIII set the contribution rates for both the PCC and Brick funds, these provisions on their own do not impose an obligation on DRI to make contributions to the funds. Article XV is the only provision in the CBA that imposes an obligation on DRI to make contributions to the funds and it explicitly imposes an obligation with respect to the PCC funds only. In its objection to the R&R, plaintiff cites to Article XV arguing that it "states that an Employer shall make fringe benefit contributions . . . in an amount specified in Article XIII and Article XVIII." What plaintiff omits, though, is the most relevant contractual language in the entire provision -- language imposing only an obligation to make contributions to the PCC funds. As Judge Orenstein surmised in his R&R, this discrepancy could be due to an oversight by the parties, but this Court will not impose, as a matter of contract, an additional obligation on DRI that is not provided for in the CBA as written. Furthermore, Lanzafame has pointed to no other source that obligates DRI to make contributions to the Brick funds. There

7

being no obligation to the contrary, the Court adopts Judge Orenstein's recommendation to limit recovery of unpaid contributions to the PCC funds.

4. Interest on Unpaid Dues

Plaintiff next objects to Judge Orenstein's recommendation that interest not be awarded on unpaid union dues. Lanzafame contends that the collection of unpaid union dues is governed by state law, which provides that interest "shall be recovered upon a sum awarded" because of a breach of contract from the date of breach. N.Y. C.P.L.R. 5001(a). Plaintiff consequently seeks prejudgment interest at a rate of 9%. See N.Y. C.P.L.R. 5004. An award of prejudgment interest for LMRA claims, however, is permitted in a court's discretion and at a rate within that court's discretion. Finkel, 708 F. Supp. 2d at 287 (citing Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers v. United Aircraft Corp., 534 F.2d 422, 446-47 (2d Cir. 1975)). In awarding interest, a court may look to state law to determine an appropriate rate. Lodges 743 & 1746, 534 F.2d at 446. In his R&R, Judge Orenstein found that since the CBA explicitly provides for interest on unpaid contributions but is silent regarding interest on unpaid dues, the intent of the parties was to provide for an award on the former but not the latter. All considered, and viewed de novo, including the available discretionary prejudgment interest, the Court sees no reason in fact or law to disturb Judge Orenstein's finding, and, therefore, adopts his recommendation.

5. Attorneys' Fees and Costs

Lastly, plaintiff objects to the recommended reduction of attorneys' fees for partners from $220 per hour to $200 per hour, for junior associates from $160 to $100, and for paralegals from $80 to $70, and to an "across-the-board percentage" cut of ten percent to the number of hours documented. These adjustments reduce recovery of fees from $6,866.00 to $4,783.50.

Hourly rates for attorneys approved in recent cases in this district have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants. Said v. SBS Elecs., Inc., No. CV 08-3067, 2010 WL 1265186, at *10 (E.D.N.Y. Feb. 24, 2010) (citing Fuchs v. Tara Gen. Contracting, Inc., No. CV 06-1282, 2009 WL 3756655, at *2 (E.D.N.Y. Nov. 3, 2009)). As Judge Orenstein discussed in his R&R, Lanzafame has provided no reason why attorneys' fees should be awarded at a rate greater than the minimum hourly rate typically awarded in these types of cases. As such, in light of the evidence submitted, the Court finds that the rate reductions computed by Judge Orenstein were reasonable and adopts his recommendation.

The Court also agrees that the total number of hours claimed in this case is excessive. As Judge Orenstein found, the billing reveals duplication of efforts and significant time charges for tasks that should have taken only minutes. Furthermore, this was a "straightforward and routine ERISA matter." Lanzafame v. MA Gen. Constr. Co, No. 09-CV-4876, 2010 U.S. Dist. LEXIS 140439, at *18 (E.D.N.Y. Dec. 14, 2010). Defendants defaulted and the instant motion was undisputed. See id.; Del Turco v. Taylor Tile Co., 03-CV-5543, 2007 U.S. Dist. LEXIS 68358, at *14 (E.D.N.Y. Aug. 6, 2007). In this scenario, the Court may order an across-the-board percentage reduction in compensable hours, In re "Agent Orange" Prods. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987), to exclude hours that are "excessive, redundant, or otherwise unnecessary," Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). Accordingly, the Court adopts Judge Orenstein's recommendation and reduces fees by ten percent. Plaintiff is therefore awarded $4,783.50 in attorney's fees.

Plaintiff also objects to the recommended reduction in costs from $246.12 to $165.00, arguing that they are reasonable and well documented. A court will generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients." MA Gen. Constr. Co, 2010 U.S. Dist. LEXIS 140439, at *20 (quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987)) (internal quotations omitted). Here, however, as Judge Orenstein found, Lanzafame failed to provide adequate proof that $81.12 for postage and photocopying expenses were necessary to this litigation and were in fact incurred. The Court therefore awards $165.00 in litigation costs.

### III. CONCLUSION

For the foregoing reasons, upon de novo review, the Court finds Magistrate Judge Orenstein's R&R to be correct, well-reasoned, and free of any clear error. The Court, therefore, adopts the R&R in its entirety as the opinion of the Court. For the reasons set forth above, the Court directs the Clerk to enter judgment against DRI in the total amount of $15,355.96, consisting of $7,379.51 in unpaid contributions to the PCC Funds; $844.35 in unpaid union dues; $707.70 in interest on unpaid contributions; $1,475.90 in additional liquidated damages; $4,783.50 in attorneys' fees; and $165.00 in costs. The Court further orders that defendant submit to an audit for the contractual term ending on June 30, 2008. In that vein, Lanzafame is permitted to petition the Court to amend the judgment to reflect any additional damages that might be appropriately awarded. Finally, the Court denies Lanzafame's remaining requests for relief, including an injunction and the posting of a surety bond. All claims against DiMarco are also dismissed.

The Clerk of the Court is directed to enter judgment in accordance with this Memorandum and Order and to close this case for administrative purposes.

**SO ORDERED.**

Dated: Brooklyn, New York
       March 14, 2011

                                                        s/ENV

                                      ERIC N. VITALIANO
                                      United States District Judge